DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Lori T., has appealed from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to three of her minor children, S.T., V.T., and P.T., and placed them in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.
 I {¶ 2} Appellant is the mother of S.T., born June 3, 2002, V.T., born May 14, 2003, and P.T., born June 11, 2004. Appellant's husband and the biological father of these children, Paul T., was represented by counsel at the permanent custody hearing below. He did not participate in the hearing himself, however, and is not a party to the present appeal.[1]
Appellant has two additional children, E.S. and S.S., whose custody is not at issue in the present case. These two children were fathered by a different man.
 {¶ 3} The two girls, S.T. and V.T., were initially taken into custody by the Akron police pursuant to Juv. R. 6 on July 6, 2003, after the parents were arrested on charges of felony child endangering, arson, inducing panic, and making a false police report. Reportedly, Appellant contacted the police and indicated that the home was being burglarized. When the police arrived, it was determined that Appellant's report was false. However, the police observed that fireworks and smoke bombs had been set off in the home's basement while the children were upstairs. S.T. was found in her crib, and was soaked in urine and sweat, while V.T. was found in a stroller, and was also soaked in urine. The windows and doors of the home were closed, and there was no ventilation. The children were treated at Children's Hospital for smoke inhalation and released. Both had diaper rash. CSB was contacted for follow-up.
 {¶ 4} On July 7, 2003, CSB filed a complaint, alleging that the children were abused, neglected, dependent, and endangered. The children were placed in emergency temporary custody and the matter proceeded to adjudication and disposition. The parties stipulated to findings of dependency and neglect, and the children were placed in temporary custody on September 26, 2003. A case plan was developed and adopted by the court. The case plan required both parents to: (1) successfully complete a parenting program and utilize what they learned; (2) maintain safe, stable, and independent housing; (3) participate in a mental health assessment and follow all recommendations; and (4) be law-abiding citizens and follow all the rules of their probation. On December 5, 2003, the parents moved for legal custody of S.T. and V.T. On April 27, 2004, CSB moved for a six-month extension of temporary custody, and the motion was granted on June 4, 2004 upon agreement of all the parties.
 {¶ 5} P.T. was born on June 11, 2004. On July 21, 2004, CSB filed a complaint, alleging that newborn was dependent, and sought protective supervision. The claims were based on the poor condition of the home and the inappropriate conduct of the parents, which placed the child at risk. On August 30, 2004, P.T. was adjudicated to be a dependent child, and, on October 19, 2004, was placed in the legal custody of Appellant with protective supervision in CSB. On October 21, 2004, CSB moved to change the disposition of P.T. to temporary custody. On October 26, 2004, the trial court placed the child in emergency temporary custody, and set the matter for a December 3, 2004 hearing on the motion for change of disposition, which was later continued until January 11, 2005.
 {¶ 6} On December 9, 2004, and before the motion for change of disposition was heard, CSB moved for permanent custody of all three children. On January 11, 2005, Appellant moved for another six-month extension. On January 14, 2005, the trial court granted the motion for change of disposition of P.T. to temporary custody. On April 8, 2005, the trial court granted CSB's motion for permanent custody and denied Appellant's motion for a six-month extension of temporary custody.
 {¶ 7} Appellant has timely appealed and has assigned three errors for review. The second and third assignments of error will be considered together because they are related.
 II Assignment of Error Number One
"THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY OF P.T., IV WHERE THE PUBLIC CHILDREN SERVICES AGENCY DID NOT HAVE STATUTORY AUTHORITY TO SEEK SUCH DISPOSITION."
 {¶ 8} Through her first assignment of error, Appellant contends that the trial court lacked statutory authority to grant permanent custody of P.T. to CSB because the trial court did not have temporary custody of the child at the time CSB filed its motion for permanent custody of him. Appellant claims that, pursuant to R.C. 2151.413, motions for permanent custody may only be made when the child is already in the temporary custody of the agency. In this case, the child was in the emergency temporary custody of CSB at the time the motion for permanent custody was filed. Temporary custody was awarded shortly after the motion for permanent custody was filed.
 {¶ 9} Without reaching the merits of this question, we note that Appellant failed to raise this issue in the trial court. "An appellate court will not consider any error which a party complaining of a trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court."[2] LeFort v. Century 21-Maitland Realty Co.
(1987), 32 Ohio St.3d 121, 123; Sekora v. General Motors Corp. (1989),61 Ohio App.3d 105, 112. Failure to raise a timely objection, may be found to result in a waiver of the alleged error. Lefort,21 Ohio St.3d at 123.
 {¶ 10} The record discloses that Appellant had the opportunity to object to this procedure, but failed to do so. Since Appellant failed to object to the filing of the motion for permanent custody, we will not consider this matter for the first time on appeal. Furthermore, this issue does not concern the jurisdiction of the trial court, as suggested by Appellant, because the juvenile court had continuing jurisdiction over the minor child, P.T. See, e.g., R.C. 2151.353(E)(1) and R.C. 2151.417(A) and (B). Accordingly, the Appellant's first assignment of error is overruled.
 Assignment of Error Number Two
"THE TRIAL COURT ERRED BY GRANTING PERMANENT CUSTODY WHERE THE BEST INTERESTS OF THE CHILDREN INDICATED THAT A SECOND SIX-MONTHS EXTENSION SHOULD HAVE BEEN GRANTED AND [CSB] FAILED TO MAKE REASONABLE EFFORTS TO IMPLEMENT THE CASE PLAN FOR REUNIFICATION."
 Assignment of Error Number Three
"THE TRIAL COURT ERRED BY FINDING THAT PERMANENT CUSTODY WAS SUPPORTED BY CLEAR AND CONVINCING EVIDENCE."
 {¶ 11} In her second and third assignments of error, Appellant contends that the judgment of the trial court was against the weight of the evidence. In her supporting argument, she contends that the trial court erred in finding that P.T. could not be placed with her within a reasonable time or should not be placed with her, and that permanent custody was not in the children's best interest. Instead, she contends that a six-month extension should have been granted.
 {¶ 12} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); see, also, In re William S. (1996), 75 Ohio St.3d 95, 99.
 {¶ 13} The trial court found that the first prong of the permanent custody test was satisfied as to S.T. and V.T. by the fact that they had been in the temporary custody of CSB for at least 12 of the prior 22 months. See R.C. 2151.414(B)(1)(d). As to P.T., the trial court found that the first prong of the permanent custody test was satisfied by a finding that the child could not be placed with either of his parents within a reasonable time or should not be placed with his parents. See R.C. 2151.414(B)(1)(a). The trial court found that the second prong of the permanent custody test was satisfied as to all three children because it was in their best interests to be placed in the permanent custody of CSB. See R.C. 2151.414(D). In the present appeal, Appellant has challenged two findings: (1) that P.T. could not or should not be placed with either of his parents, and (2) that it was in the best interests of the children to be placed in the permanent custody of CSB.
 {¶ 14} Appellant contends that the judgment of the trial court was against the manifest weight of the evidence. When evaluating whether a judgment is against the manifest weight of the evidence in a juvenile court, the standard of review is the same as that in the criminal context. In re Ozmun (Apr. 14, 1999), 9th Dist. No. 18983, at 3. In determining whether a criminal conviction is against the manifest weight of the evidence:
"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 15} Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." Karchesv. Cincinnati (1988), 38 Ohio St.3d 12, 19. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." Id.
 {¶ 16} Accordingly, before an appellate court will reverse a judgment as being against the manifest weight of the evidence in this context, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
 {¶ 17} We first consider the evidence as to the first prong of the permanent custody test. In regard to S.T. and V.T., the record supports the trial court's determination that the children had been in the temporary custody of CSB for more than 12 of the prior 22 consecutive months. See R.C. 2151.414(B)(1)(d). Accordingly, the first prong of the permanent custody test is satisfied as to S.T. and V.T.
 {¶ 18} As to P.T., the trial court found that he could not be placed with a parent within a reasonable time or should not be placed with a parent. In making this determination, the court is required to consider all relevant evidence. R.C. 2151.414(E). R.C. 2151.414(E) lists several factors, the presence of any one of which requires the court, upon a finding by clear and convincing evidence that the factor exists, to enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. Id. See, alsoIn re Patterson (1999), 134 Ohio App.3d 119, 125.
 {¶ 19} In the present case, the trial court has cited R.C. 2151.414(E)(1), [continuous and repeated failure to substantially remedy the conditions causing the removal of the child]; R.C. 2151.414(E)(4), [a lack of commitment or an unwillingness to provide an adequate home for the child]; and R.C. 2151.414(E)(16), [any other relevant factor] in concluding that P.T. could not or should not be placed with either parent.
 {¶ 20} The record reveals that Paul, the father, failed to substantially complete his case plan objectives; continued to have problems with substance abuse, anger management, and compliance with the law; lacked any ability to initiate care for the children; and failed to regularly visit with his children.
 {¶ 21} As to Appellant, the record reveals that she does not have a home, employment, or independent income. In December 2004, Appellant moved out of their shared rental apartment, went to live temporarily with the maternal grandmother, and obtained a protective order against Paul. Without Paul's social security disability income, Appellant has no independent means of support. She claims that she has applied for housing and employment, but there is no evidence that housing or employment will be available within a reasonable time. Appellant maintains that she has ended her relationship with Paul, but there is evidence of continuing contact — despite his substance abuse and history of violent behavior. Appellant also states that the father of her first two children is not permitted to have access to those children. Appellant has little insight into her situation or her needs, and does not obtain appropriate help when it is needed. Appellant's judgment raises serious questions about her ability to keep the children safe.
 {¶ 22} Appellant has argued that CSB failed to use reasonable efforts to implement the case plan. A lack of reasonable case planning effort will be reversible error, however, only if the trial court's order of permanent custody had been based solely on R.C. 2151.414(E)(1), which requires the trial court to find that the child cannot or should not be returned to either parent because the parent failed to substantially remedy the conditions causing the child to be placed outside the home "notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents[.]" In re Ward (Aug. 2, 2000), 4th Dist. No 99CA2677, 2000 Ohio App. LEXIS 3519 at *7, citing with approval In reScott (Sept. 17, 1999), 6th Dist. No. L-99-1012, 1999 Ohio App LEXIS 4301.
 {¶ 23} In the present case, the trial court did not rely solely on R.C. 2151.414(E)(1). The existence of evidence on only one of the factors listed in R.C. 2151.414(E) is necessary to support a finding that a child cannot or should not be placed with a parent. In re Patterson,134 Ohio App.3d at 125. Even assuming merit in Appellant's argument, we conclude that the evidence nevertheless supports finding on another supportive factor listed in R.C. 2151.414(E). The evidence reveals that Paul has demonstrated a lack of commitment toward P.T. by failing to support, visit and communicate with the child for several months. See R.C. 2151.414(E)(4). In addition, the evidence also supports a finding that Appellant's failure to separate herself from Paul along with her failure to take any meaningful steps towards independence demonstrate an unwillingness to provide an adequate permanent home for the child. See R.C. 2151.414(E)(4). Because the evidence supports a finding pursuant to R.C. 2151.414(E)(4), Appellant's argument, which relies on R.C. 2151.414(E)(1), is without merit.
 {¶ 24} Accordingly, the record supports the judgment of the trial court that P.T. cannot be placed with either parent within a reasonable time or should not be placed with either parent. The judgment of the trial court as to P.T. on the first prong of the permanent custody test is supported by the weight of the evidence.
 {¶ 25} Next, the trial court must also find that the grant of permanent custody to the agency is in the best interests of the children based on an analysis under R.C. 2151.414(D) See R.C. 2151.414(B)(1). When determining whether a grant of permanent custody is in the children's best interests, the juvenile court must consider the following factors:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; [and]
"(5) Whether any of the factors in divisions (E) (7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D)(1)-(5).
Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors. See In re Smith (Jan. 2, 2002), 9th Dist. No. 20711; see, also, In re Palladino, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, ¶ 24.
 {¶ 26} The best interest prong of the permanent custody test requires the agency to prove by clear and convincing evidence that permanent custody is in the best interest of the children. Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Inre Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368, quoting Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 27} The first best interest factor requires consideration of the relevant personal interactions and interrelationships of the children. By all accounts, Paul did not initiate any activity with the children, but rather, was directed by Appellant in his interaction with the children. There is no record of his current whereabouts and no indication that he would have any significant positive relationship with the children in the future.
 {¶ 28} Several witnesses provided additional testimony that is relevant to this factor. Ann Hickin, a psychologist at Northeast Ohio Behavioral Health, learned that Paul had been bullied and sexually abused as a child. She testified that Paul had significant emotional issues and lacked parenting skills. He had problems with substance abuse and anger management. He had poor insight, unrealistic thinking, and a poor ability to make decisions.
 {¶ 29} Dale Slivka, a therapist at Portage Path Behavioral Health, also testified that Paul had been diagnosed with depressive disorder, intermittent explosive disorder, antisocial personality disorder, and borderline intellectual functioning. Slivka said Paul attended his bi-weekly counseling sessions until December 2004, and then stopped altogether. Slivka said Paul made only slight progress in over a year and one-half of counseling. Slivka testified regarding Paul's substance abuse problems and probation violations.
 {¶ 30} Paul was also involved in several incidents of domestic violence. In September 2004, Appellant called the police because Paul was breaking things up in the house with a hammer. When the police arrived, they found drugs in his possession and arrested him. In October 2004, a neighbor called police because of an argument between Paul and Appellant. In December 2004, an argument over a cell phone resulted in Paul punching Appellant in the mouth, leaving her with a bloodied face. Appellant pressed charges, but the case was dismissed when she failed to appear at a court hearing. Appellant claimed she never received notice of the hearing. Appellant did obtain a protective order against Paul at that time, but according to the maternal grandmother, the caseworker, and the guardian ad litem, she has nevertheless continued to maintain contact with him.
 {¶ 31} Psychologist Hickin also reported that Appellant had been physically, mentally, and sexually abused by her own father, and had never been treated for such abuse. Her relationship with her mother was said to be "contentious." Hickin described Appellant as mistrustful, restless, irritable, unrealistic, and not very insightful. She was said to love her children, but to lack parenting skills. Hickin said Appellant was not able to ask for help even when she knew she needed it, and has no social, psychological, or emotional support system. According to Hickin, these emotional issues hamper Appellant's ability to make good decisions, seek appropriate help, and, in general, to parent. Significantly, Hickin observed that Appellant considered her daughter, V.T., as not rewarding to care for, problematic, moody, and demanding.
 {¶ 32} Sheila Garten, an outpatient therapist at Portage Path Behavioral Health, testified that Appellant never presented any concerns for them to address in therapy. Appellant referred to this testimony as evidence that she did not require further counseling, although she also admitted that she had been diagnosed with depression and that further evaluation was requested to evaluate her for borderline bi-polar disorder. The caseworker considered this as indicative of Appellant's lack of insight into her problems. The guardian ad litem construed this as a lack of self-reporting of concerns.
 {¶ 33} Nancy Pekar, a supervisor of the Help Me Grow home-based visitation program testified regarding her visits to the home in August 2004. She found a disorganized and cluttered home, but a clean and dressed two-month old baby who was developing normally. Pekar also reported, however, the parents had unrealistic expectations of the child.
 {¶ 34} Lori Florin, a probation officer for the Akron Municipal Court Probation Department, testified that both parents were placed on probation for charges of child endangering and arson. Appellant successfully completed her probation, but Paul's probation was extended for leaving Oriana House without leave and for failing to appear at a show cause hearing. There was an outstanding warrant for his arrest. In January 2005, additional criminal charges were lodged against him for drug-related matters.
 {¶ 35} Rubye Boone, a CSB visitation aide testified to her observations of visitations during the last five months. Boone said that the children were usually happy to see their parents, and they hugged and kissed them. She said that Appellant's attendance was very good, but Paul's was sporadic. Appellant was said to direct Paul, since he did not initiate any activity or play. Boone stated that she did not see Appellant join in playing with the children, but rather watched them or talked to other adults in the room.
 {¶ 36} According to Joe Gero, the CSB caseworker assigned to the case, the matter was progressing well at the beginning, but began regressing by August 2004. As to the case plan, the parents never had adequate housing. Appellant claims that she is on a waiting list for subsidized housing, but there is no evidence or certainty that such housing will ever materialize. Both of the parents completed parenting classes, but the caseworker found that the parents are not able to take advantage of the parenting information they had been given. Neither completed their mental health counseling. Their visits with the children were satisfactory and Appellant was regular in attendance. Appellant completed her probation successfully, but Paul had continuous problems with the law.
 {¶ 37} Gero testified to his concerns regarding the quality of care Appellant was able to provide and her judgment as to safety issues. The caseworker believes the parents are not permanently separated and that Paul presents a potential risk to the safety of the children. Gero noted that Appellant was aware of Paul's drug use and also noted that Appellant let a convicted felon stay in the home. According to the caseworker, Appellant has difficulty accepting input from others. The caseworker further believes that, even if Appellant leaves Paul, she is not able to provide a safe home for her children. The caseworker concluded by stating that he believed it was in the best interests of the children to be placed in the permanent custody of CSB.
 {¶ 38} Appellant testified in her own behalf. She stated that she is 22 years old and has five children. She stated that she regularly visits with S.T., V.T., and P.T., gives them hugs and kisses, brings them juice and food, and plays with them. She admits that she is not employed and does not have housing, but claims she is on a waiting list for housing. She claims she cannot afford counseling, but could if she had custody of her children. Appellant expressed her own concerns with Paul's ability to be a safe and suitable parent. She also admitted that the father of her oldest two children is not permitted to see them.
 {¶ 39} S.T., V.T., and P.T. apparently have a relationship with the maternal grandmother, but there is little evidence of interaction. They also occasionally visit with Appellant's brothers and their older siblings. The record does not contain any details as to those relationships either. The record does indicate that Appellant often complained about the maternal grandmother's care of children. Appellant has nonetheless requested that S.T., V.T., and P.T. be placed with her as an alternative to permanent custody or to an extension of temporary custody.
 {¶ 40} Evidence was also presented as to the relationship of the children with the foster families. The girls are placed with one foster family and P.T. is with another. According to the guardian ad litem, all of the children are doing very well in their foster placements, and both homes are prospective adoptive homes. S.T. and V.T. have been in the same home since January 2004. The children all get along well together and the girls really like baby P.T. The two sets of foster parents also get along well and, if they are able to adopt, have agreed to let the siblings keep in touch.
 {¶ 41} The wishes of these young children were expressed by Annette Powers, the guardian ad litem. She stated that the parents began well: attending parenting classes, counseling sessions, and had good in-home visits. But after P.T. was born, things deteriorated. Paul violated his probation, failed drug treatment twice, has been repeatedly incarcerated, stopped attending visitations and made only slight progress on anger management issues. On one occasion, he refused CSB access to the home and ran down the street with P.T. Appellant claims that this was the only time she ever left any of her children alone with Paul.
 {¶ 42} Appellant was said to be very resistant to advice. Powers testified that she believed Appellant condoned and allowed Paul's behaviors and that this affected the safety of her children. She did this by permitting Paul to remain in the home — a man who had a temper, engaged in violence, used and kept marijuana in the home, and did not take his psychiatric medications. Like caseworker Gero, Powers believes that Appellant is continuing her relationship with Paul.
 {¶ 43} Powers also maintained that Appellant has not taken any appreciable steps towards independence or the ability to support herself, find employment, or obtain suitable housing. Her plans, she said, are mere speculation. Powers believed that the increasing concerns regarding the parents' behavior and lack of case plan compliance warrant permanent custody of all the children. She stated that it would be in the best interests of the children to be placed in the permanent custody of CSB.
 {¶ 44} The third best interest factor requires consideration of the custodial history of the children. S.T. was removed from the home at 13 months; V.T. was removed at seven weeks; and P.T. was placed in protective supervision at five weeks and removed from the home at four months. By the time of the hearing on the motion for permanent custody, all three children had been in foster care for the majority of their lives. S.T. and V.T. had been in custody for more than one and one-half years. P.T. had been in temporary custody for five months.
 {¶ 45} Appellant has complained that the children were moved between foster homes and lacked stability during foster care. The two girls have been in the same foster home since January 2004, nearly 15 months. While S.T. and V.T. were moved a few times early in these proceedings, some of those changes were made because the caregivers were made to feel uncomfortable and threatened by the parents.
 {¶ 46} As to the fourth best interest factor, there was evidence before the trial court that the children were in need of permanency and there were no suitable friends or relatives willing to provide for their care.
 {¶ 47} Appellant testified that she is willing to have her three children placed with their maternal grandmother. The maternal grandmother, however, had not moved for legal custody and was raising two of her own children, as well as. a child who was in the custody of the Department of Youth Services. The maternal grandmother, herself, had been involved with CSB on three separate occasions in the past. In addition, it is unclear from the record whether Appellant's two oldest children are in the custody of the maternal grandmother or in the temporary custody of CSB. The case worker did not believe it would be in the best interests of the children to be placed in the care of the maternal grandmother.
 {¶ 48} The caseworker stated that permanent custody is in the best interests of the children and is the only means to achieve a legally secure placement. He does not believe additional time will help because over the course of this proceeding, matters have gotten worse. The parents have lost their housing. Paul has gotten into repeated criminal trouble. The parents are not getting along. Counseling has stopped. Parenting is not improving. Gero does not believe that the parents can obtain housing within the time of an extension.
 {¶ 49} The children are all doing well in foster care. The children are bonded and comfortable with their foster families, and both families have expressed an interest in adopting the children.
 {¶ 50} Upon review, the record demonstrates that there was ample evidence before the trial court from which it could conclude that permanent custody was in the children's best interests. The record does not support a conclusion that the trial court clearly lost its way and created a manifest miscarriage of justice. Consequently, the trial court did not err in denying the motion for a six-month extension of temporary custody, terminating Appellant's parental rights, and placing S.T., V.T., and P.T. in the permanent custody of CSB. Appellant's second and third assignments of error lack merit.
 III {¶ 51} Appellant's three assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
Exceptions.
Batchelder, J. Moore, J. concur.
[1] Paul T. filed a separate notice of appeal from the judgment of the trial court. He failed, however, to file an appellate brief, and his appeal was dismissed. In re S.T., V.T., P.T., 9th Dist. No. 22674.
[2] Were we to consider this argument on the merits, we would consider that R.C. 2151.417(B) appears to provide the juvenile court with continuing jurisdiction to amend a dispositional order "at any time" upon its own motion or the motion of an interested party. In addition, R.C. 2151.353(E)(2) appears to give the trial court the authority to modify an original disposition to permanent custody.