DECISION AND JUDGMENT ENTRY.
{¶ 1} Appellants, Nicole J. and Adrian S., appeal the judgment of the Lucas County Court of Common Pleas, Juvenile Division, which terminated their parental rights to Nevaeh J.[1] For the following reasons, the judgment is affirmed.
 {¶ 2} Nevaeh was born on March 28, 2005; at the time, her mother, Nicole J., was incarcerated at the Franklin Pre-Release Center, in Columbus, Ohio. Nicole was serving an 11-month sentence for a probation violation stemming from a conviction for attempt to commit possession of crack cocaine, and was due to be released in August 2005.
 {¶ 3} On April 4, 2005, LCCSB filed a complaint in dependency and an emergency motion for shelter care. The complaint alleged that Adrian S., named as Nevaeh's putative father, had outstanding warrants for assault and domestic violence and pending charges for carrying a concealed weapon and loitering. LCCSB was also investigating separate allegations that Adrian had physically assaulted the mother of two of his other children with the children present. On April 5, 2005, an ex parte order allowing LCCSB to take Nevaeh into shelter care custody was issued. Adrian S. was served with the complaint by personal service at his residence.
 {¶ 4} Nicole's history with LCCSB began in November 2002, when the agency filed a complaint in dependency and neglect and a motion for temporary custody of two of Nicole's other children, Jasmine H. and Ja'Shawn H. Nicole was given psychological services, drug abuse counseling, parenting classes, and participated in Drug Court. On June 21, 2004, while she was successfully completing Drug Court, she voluntary relinquished her parental rights to Madison W., born April 4, 2004. Soon afterwards, custody of Jasmine and Ja'Shawn was returned to Nicole. Within a year, however, she relapsed into drug use and on December 28, 2004, LCCSB filed a motion for permanent custody of Jasmine and Ja'Shawn. On July 14, 2005, LCCSB's motion for permanent custody was granted.
 {¶ 5} On April 18, 2005, Nevaeh was placed in shelter care. The court appointed counsel for Adrian at that time, and ordered him to undergo a diagnostic assessment. Nevaeh was adjudicated dependent by consent on May 24, 2005; although no transcript was filed on appeal, the judgment entry indicates that counsel for both Adrian and Nicole were present at that hearing.
 {¶ 6} On November 22, 2005, the matter was called for a hearing on disposition. Adrian requested and received a continuance in order to allow him to submit to genetic testing to determine if he was Nevaeh's biological father. The matter was continued to January 17, 2006.
 {¶ 7} At the dispositional hearing on January 17, 2006, were Debra Wedding, a caseworker with LCCSB; Nicole J., mother of Nevaeh, and her attorney; Adrian S., father of Nevaeh and his attorney; and Ms. Rose, the guardian ad litem ("GAL") appointed for Nevaeh. At the beginning of the proceedings, Adrian moved for a second continuance. He asserted that he was willing to participate in case planning services and argued that a second continuance was necessary because he had just received a case plan the previous week and had not had an opportunity to be referred to services. Appellee argued that Adrian had been served with pleadings from the filing of the complaint as a putative father and had not responded to caseworkers' efforts to contact him in order to initiate a case plan until November 2005. The trial court denied Adrian's motion, explaining that he would not be prejudiced since he had been served with pleadings since the filing of the complaint.
 {¶ 8} LCCSB first called Adrian, who testified that he knew of Nevaeh's birth; he also acknowledged receipt of the complaint and all filings in the case. He acknowledged that he was listed on the complaint as the putative father, but said that he delayed establishing his paternity because he was "in denial" about the circumstances. He admitted his awareness of case planning and services offered, but did not want to participate in case planning until he had established paternity. Once his paternity was established, he attended an administrative review hearing on the case plan on January 9, 2006, and received referrals to services. He scheduled a substance abuse assessment for January 12, 2006; he explained he failed to appear to that assessment because his other daughter was sick in the hospital that day. He expressed a desire to have a chance to receive services through a case plan. When questioned by counsel for LCCSB, he admitted to a criminal history which included drug abuse and domestic violence charges, and admitted to his incarceration for "a day or two" two weeks prior to the instant hearing. He also admitted to occasionally using marijuana and parentage of four other children; he had not paid support for any of his four other children because he had been unemployed for five years, but admitted that he received SSI benefits for his learning disability.
 {¶ 9} Next, LCCSB called Nicole, who admitted that her drug relapse and probation violations had caused her recent incarceration. She had not had any drug treatment since her release in August, and admitted to still using illegal drugs, including crack cocaine and marijuana four days prior to the hearing. She was currently living with a family member due to her unemployment and lack of income. She also asked the court for another opportunity to receive a case plan and participate in services, explaining that she had not missed an opportunity to visit with Nevaeh, visiting at least once a week. LCCSB did not dispute her visitations. She also discussed a brief stay at a shelter since her release; she had entered the shelter voluntarily seeking "a change," but only stayed four days because she was still using drugs and was not allowed to "detox" there.
 {¶ 10} Debra Wedding, the LCCSB caseworker on Nicole's case since the fall of 2002, testified that she had some contact with Nicole after her release, but that contact was sporadic. She referred Nicole for two substance abuse assessments, neither of which Nicole attended. With respect to Adrian, Wedding stated that she left a card at his address in April 2005, requesting that he contact her; she also sent letters in May and July of 2005. Wedding finally met Adrian in November 2005, after Nicole had spoken to Adrian and arranged for his paternity testing. Adrian had told Wedding that he did not want to begin case plan services until after his paternity had been determined. Wedding recommended that Adrian complete a substance abuse assessment and an assessment for domestic violence classes, because he had had previously been charged with several domestic violence offenses. She could not say whether Adrian had any separate investigations pending with LCCSB. Wedding acknowledged that Adrian had visited with Nevaeh "two or three" times, that he attended an administrative case plan review meeting on January 9, 2006, and that at that time he made an appointment for his substance abuse assessment. She also acknowledged that it is common for putative fathers not to want to participate in case planning services until after establishing paternity; however, in her opinion, failing to establish paternity for over seven months was a "long wait." Ultimately, she opined that permanent custody was in Nevaeh's best interests.
 {¶ 11} After Wedding's testimony, the parties submitted their closing arguments. Immediately thereafter, the court stated that it found clear and convincing evidence that granting permanent custody to LCCSB was in Nevaeh's best interest, and that reasonable efforts to reunify had been made.
 {¶ 12} Appellate counsel was appointed to jointly represent Nicole and Adrian. They have raised the following assignments of error:
 {¶ 13} "Assignment of Error No. I: The trial court erred in granting permanent custody to Lucas County Children Services Board as Lucas County Children Services Board failed to show by clear and convincing evidence that it is in the best interest of the minor child that permanent custody be awarded to Lucas County Children Services Board and they failed to prove by clear and convincing evidence Ohio Revised Code § 2151.414(E)(1), (2), (4), (11), (13), and (14) as it relates to the father, Adrian [S.]
 {¶ 14} "Assignment of Error No. II: The trial court violated appellant Adrian [S.]'s due process [sic] by failing to grant the continuance requested by appellant Adrian [S.]
 {¶ 15} "Assignment of Error No. III: The trial court erred by granting permanent custody to LCCSB as appellant [mother] was not granted an opportunity to complete a case plan regarding this minor child and Lucas County Children Services Board failed to show by clear and convincing evidence that it is in the best interest of the minor child that permanent custody be awarded to Lucas County Children Services Board and they failed to prove by clear and convincing evidence Ohio Revised Code Sections 2151.414(E)(1), (2), (4), (13), and (14)."
 {¶ 16} Because the first and third assignments of error involve the same analysis, we address them jointly. We first address the arguments relating to the mother, Nicole J. The trial court relied, in part, on R.C. 2151.414(B)(1)(d), which allows a trial court to terminate a parent's rights upon the child being in the custody of a public children services agency for 12 out of a consecutive 22 month period. For the purposes of this determination, a child is considered to have entered the temporary custody of the agency at the earlier of 1) the date the child is adjudicated neglected, dependent, or abused, or 2) the date that is 60 days after the removal of the child from home. R.C.2151.414(B). The reliance on this provision is disturbing, as Nevaeh was only approximately ten months old at the time of the permanent custody hearing. This statutory section appears to have been inserted in the judgment entry as a matter of routine. The Ohio Supreme Court has made clear that a motion for permanent custody must allege grounds that currently exist and that an agency filing for custody under the 12 month provision must show that the child had been in the temporary custody of the agency for 12 months on the date the complaint was filed. In reC.W., 104 Ohio St.3d 163, 2004-Ohio-6411. The time that passes between the filing of the motion for permanent custody and the permanent custody hearing cannot count toward the 12 month period. Id., ¶ 26.
 {¶ 17} The other means of gaining permanent custody is through R.C.2151.414(E), pursuant to which appellee must prove, by clear and convincing evidence, that at least one of the statutory factors applied to Nicole. "Because the right to raise and nurture one's child is so basic, statutory conditions which defeat that right must be strictly construed. In re Cunningham (1979), 59 Ohio St.2d 100, 105." In reAlexis K., 160 Ohio App.3d 32, 2005-Ohio-1380, ¶ 24. "The court's decision to terminate parental rights, however, will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established. In re ForrestS. (1995), 102 Ohio App.3d 338, 345; Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus." Id., ¶ 26.
 {¶ 18} The trial court found that R.C. 2151.414(E)(1), (2), (4), (13), and (14) applied to Nicole. Those sections provide:
 {¶ 19} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 20} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 21} "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section2151.353 of the Revised Code;
 {¶ 22} "* * *
 {¶ 23} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 24} "* * *
 {¶ 25} "(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.
 {¶ 26} "(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect."
 {¶ 27} R.C. 2151.414(E)(1) was inappropriately found to apply to Nicole. That section states that a child should not be placed with a parent or cannot within a reasonable time be placed with a parent if that parent "continuously and repeatedly" failed to substantially remedy the condition causing the child to be placed outside her home. The condition which initially caused Nevaeh to be placed away from her birth mother was her mother's incarceration. The judgment entry upon adjudication was based on a consent finding of dependency with no further specification. Although Nicole neither availed herself of the services to which she was referred, nor remedied her prior substance abuse issues, her incarceration ended in August 2005; therefore, the condition which caused Nevaeh to be placed in the temporary custody of LCCSB had been remedied. Since Nicole's incarceration was the specific reason for Nevaeh's removal, the court should have focused its inquiry under R.C. 2151.414(E)(1) on whether Nicole had remedied this specific condition. See In re William S. (1996), 75 Ohio St.3d 95, 100.
 {¶ 28} However, the trial court did correctly and properly find that R.C. 2151.414(E)(2) applied to Nicole. In her testimony, Nicole admitted relapsing into drug use, after having admitted to a 19 year history of cocaine abuse. She admitted to being unable to live independently; after her release from incarceration, she spent a short period of time in a shelter, and currently lives with family members upon whom she is entirely dependent. The trial court could have also properly found R.C.2151.414(E)(13) to apply; a list of Nicole's prior drug charges and incarcerations was admitted into evidence. Although Nicole had not been arrested in the six months since her release, she acknowledged that a continuing pattern of incarceration was common for her.
 {¶ 29} If one of the R.C. 2151.414(E) factors is found to exist with respect to a parent, the court is required to enter a finding of parental unfitness. R.C. 2151.414(E); In re William S., supra, syllabus. Competent and credible evidence supported the findings of R.C.2151.414(E)(2) and (13) as applied to Nicole.
 {¶ 30} Next, we review the trial court's finding that Nevaeh cannot or should not be placed with Adrian within a reasonable period of time. The same standard of review applies; each statutory finding must be supported by clear and convincing evidence. The trial court did not separately state which factors of R.C. 2151.414(E) applied to Adrian. However, findings were entered for Adrian underneath its analysis of R.C. 2151.414(E)(2), (4), and (14).
 {¶ 31} With respect to R.C. 2151.414(E)(2), the judgment entry stated that Adrian "just recently established paternity. [He] ignored the many requests and letters from the caseworker requesting him to meet with her for assessment of case plan services." This statement fails to explain how Adrian has a "[c]hronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency * * * so severe that it makes [him] unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section * * *." Although, during his testimony, Adrian admitted to occasionally using marijuana, LCCSB admitted no evidence of a severe chemical dependency which would render him unable to provide a home within a year of the disposition hearing. He had been referred for a substance abuse assessment and made his appointment on January 9, 2006, only eight days prior to the hearing. He acknowledged missing his appointment the previous Thursday, January 12, 2006, five days prior to the hearing, but testified that his other daughter was taken sick to the hospital emergency room and he spent the day with her there; LCCSB did not dispute his explanation.
 {¶ 32} R.C. 2151.414(E)(14) was demonstrated by clear and convincing evidence. That section requires a finding of parental unfitness if the parent "for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect." Although no evidence of a child support order for Adrian and Nevaeh was introduced, the lack of one does not preclude one from providing support. Neither does the fact that Adrian had not established paternity for over seven months; even a putative father, if willing to provide basic necessities for a child, may give to the child such as he is able without genetic testing. At the hearing and on appeal, Adrian asserts that, although he is unemployed, he receives Social Security Disability benefits which would assist him in providing a home for Nevaeh; this argument, however, begs the question of why he failed to attempt to do so for over seven months. The lack of any attempt on his part, even after he underwent genetic testing, to provide even small tokens of food or clothing to Nevaeh demonstrates an unwillingness to do so. The same evidence supports a finding of R.C.2151.414(E)(4), which requires a finding of parental unfitness if the parent demonstrates a lack of commitment by "failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child." By waiting over seven months to establish paternity, and by failing to contact caseworkers or to attempt to visit Nevaeh during this time, he demonstrated an unwillingness to provide an adequate permanent home for her.
 {¶ 33} The other statutory factor which could have applied to Adrian is R.C. 2151.414(E)(1), although the trial court made no specific findings in relation to Adrian under this section in its judgment entry. That section enables a court to consider "parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties." This section also requires an agency to show that a parent has failed to remedy the child's initial conditiononly after the agency has provided "reasonable case planning and diligent efforts" to assist the parent. In re S.T., V.T., P.T., 9th Dist. No. 22665, 2005-Ohio-4793, ¶ 22.
 {¶ 34} LCCSB argues that, since the filing of the complaint in April 2005 until December 2005, Adrian failed to avail himself of case planning and he failed to establish his paternity. As required by statute, LCCSB filed a case plan for Nevaeh on May 24, 2005. With respect to Adrian, the case plan stated that he would "show an active interest" in Nevaeh, "make arrangements" for an assessment, "pay child support," "establish paternity," and visit "on a regular basis." Adrian acknowledged receipt of the case plan and the letters from the caseworker. By the time of the dispositional hearing, Adrian had established paternity, made arranged for a substance abuse assessment the week prior to the hearing, and visited Nevaeh several times; however, these actions came only after his first motion to continue the permanent custody hearing was granted. The next case plan, updated January 9, 2006, for which Adrian was present, was filed January 12, 2006; listed goals for Adrian included becoming drug free, for which a substance abuse assessment was required. His second goal was the "learn to resolve conflicts without resorting to violent behavior * * *" for which a domestic violence assessment was required. No one testified as to whether he had, in fact, been referred for a domestic violence assessment or had an opportunity to schedule the appointment. Adrian now argues that he had not had an opportunity to avail himself of services which would allow him to assume parental duties.
 {¶ 35} "The current statutory scheme still emphasizes the importance of preserving the family unit and reuniting the child with his natural parents if that can be done in a timely manner. Case plans continue to be required in most cases and are to have as one of their general goals the elimination of the need for out-of-home placement so the child can safely return home. See R.C. 2151.412(F)(1)(b)." In Re K.G., S.G.,T.G., 9th Dist. Nos. 03CA0066, 03CA0067, 03CA0068, 2004-Ohio-1421, ¶ 19. Although Adrian had complied somewhat with the initial case plan by the time of the permanent custody hearing by establishing paternity and visiting, a finding that he was unsuitable pursuant to R.C.2151.414(E) was still supported by convincing evidence. That is, after Adrian was provided with a reasonable case plan, he was aware of Nevaeh's circumstances, waited for over seven months failed to establish paternity in order to avail himself of services, and failed to "show an active interest" in Nevaeh until November 2005. His delay demonstrated a lack of commitment toward Nevaeh and an unwillingness to provide her with a permanent home, or to take steps to provide her with a permanent home. Although this statutory section prescribes no time limit, and must necessarily be a fact intensive and context-dependent inquiry, Adrian's failure to contact LCCSB for this time period, despite his later attempts at amelioration, provides clear and convincing evidence supporting this finding.
 {¶ 36} It was also in Nevaeh's best interest to award permanent custody to LCCSB. A finding of best interests, made by considering "all relevant factors," including the statutory factors of R.C. 2151.414(D), is required for motions filed pursuant to R.C. 2151.413. The statutory factors include:
 {¶ 37} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 38} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 39} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 40} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 41} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 42} Nevaeh's GAL filed a report in which she expressed that it would be in Nevaeh's best interest to grant permanent custody to LCCSB. Nevaeh had spent her entire life in the temporary custody of LSSCB, placed in foster care. She is in need of a legally secure placement, which could not be achieved without granting LCCSB permanent custody. As clear and convincing evidence supports the statutory findings, appellants' first and third assignments of error are not well-taken.
 {¶ 43} The second assignment of error challenges the trial court's decision to deny Adrian's request for a second continuance in order to allow him time to participate in case planning services and comply with the newly stated goals for him. By the time of the permanent custody hearing, he had established paternity, had participated in an administrative review of the case plan eight days prior, and had been referred to substance abuse counseling. The trial court orally ruled that Adrian would not be prejudiced, or his counsel hampered, by denying the continuance.
 {¶ 44} With respect to continuances, this court has held:
 {¶ 45} "Juv.R. 23 provides that `[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties.' It is well-settled that `[t]he grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion.' State v. Unger (1981),67 Ohio St.2d 65, 67. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219." In re Edward M. and Timothy M., 6th Dist. Nos. L-04-1282, L-04-1304, 2005-Ohio-3354, ¶ 21 (finding an abuse of discretion when father hospitalized at time of disposition and unable to attend).
 {¶ 46} When reviewing a denial of a request for a continuance, an appellate court employs "a balancing test which takes cognizance of all the competing considerations." State v. Unger (1981), 67 Ohio St.2d 65,67. Potential prejudice to the defendant is weighed against a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice. Id. "[A] court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." Id. at 67-68.
 {¶ 47} Here, Adrian received one prior continuance in order to receive the results of paternity testing. He requested the second in order to demonstrate, through his participation in case plan services, his willingness and ability to provide a home for Nevaeh. Although this may be a legitimate reason, Adrian's actions of choosing not to establish paternity, visit, or receive services for over seven months were dilatory. Adrian's delay in taking these basic, necessary steps toward reunification with Nevaeh demonstrates a lack of commitment and an unwillingness to provide a permanent home. The trial court's refusal to continue the hearing was not unreasonable, arbitrary, or unconscionable. Appellants' second assignment of error is found not well-taken.
 {¶ 48} For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellants are ordered to each pay one-half the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4. This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.
PETER M. HANDWORK, J.
 ARLENE SINGER, P.J.
 JUDGE; WILLIAM J. SKOW, J.
CONCUR.
[1] The child's name appears in the record alternatively as "Neavaeh." A single spelling has been used here for consistency.