OPINION
{¶ 1} Appellant, J.W., appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting permanent custody of B.G.W. aka R.M.T. (the "minor child") to Franklin County Children Services ("FCCS"). Because (1) the trial court did not abuse its discretion in denying appellant's motion for a continuance, and (2) the requisite evidence supports the trial court's *Page 2 
conclusion that an award of permanent custody is in the best interest of the minor child, we affirm.
 {¶ 2} The minor child was born at least two months early to appellant on July 15, 2006, weighed less than two pounds, and remained in the hospital for three months after her birth. At the time of the minor child's birth, both the minor child and appellant produced positive tests for cocaine. As a result, FCCS filed a complaint for temporary custody on July 17, 2006, alleging the minor child was an abused, neglected, and dependent child. The next day, the magistrate issued a decision granting FCCS a temporary order of custody, and the matter was scheduled for a hearing. The trial court appointed a guardian ad litem to serve in the dual capacity as the minor child's guardian ad litem and attorney.
 {¶ 3} On September 28, 2006, a magistrate in the trial court held a hearing on FCCS's motion, where the facts alleged in the complaint were not contested. On November 1, 2006, the trial court adopted the magistrate's decision, issued the same day, and found the minor child to be abused under the provisions of R.C. 2151.031(D), neglected under the provisions of R.C. 2151.03, and dependent under the provisions of R.C. 2151.04. A court-approved and court-adopted case plan, designed to reunify the minor child with appellant and the child's father, was implemented.
 {¶ 4} On April 10, 2007, FCCS filed a motion for permanent custody pursuant to R.C. 2151.414(B)(1)(a) and (b). The matter was set for hearing on May 30, 2007. The minor child's father initially responded on May 22, 2007 with a motion to consider alternative disposition, requesting that his mother be granted custody of the minor child; two days later an attorney was appointed for the child's father. On the scheduled hearing *Page 3 
date, the father requested the hearing be continued. He failed to appear for the ultimate hearing date and filed no appeal from the trial court's judgment.
 {¶ 5} A series of subsequent continuances at appellant's request delayed hearing on FCCS's motion for permanent custody until January 30, 2008. In the meantime, the guardian ad litem filed a report recommending FCCS's motion for permanent custody be granted. As a result of the hearing conducted on January 30, 2008, the trial court issued a February 6, 2008 Judgment Entry that concluded (a) the minor child could not be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents, and (b) the minor child was abandoned. In determining the best interests of the minor child, the court examined the relevant factors under R.C. 2151.414(D) and concluded the child's best interests were served through terminating appellant's right to the minor child. Accordingly, the trial court granted FCCS's motion for permanent custody.
 {¶ 6} Appellant appeals, assigning two errors:
 First Assignment of Error
 The Juvenile Court erred in overruling Appellant's motion for a continuance.
 Second Assignment of Error
 The trial court erred in finding that an award of permanent custody was in the best interests of the children, pursuant to R.C. 2151.414(D).
For ease of discussion, we first address appellant's second assignment of error.
I. Second Assignment of Error — Best interests of the child {¶ 7} Appellant's second assignment of error asserts the trial court wrongly concluded the minor child's best interest is served in granting FCCS's motion for *Page 4 
permanent custody. As appellant correctly asserts, the right to rear a child is a basic and essential civil right. In re Hayes (1997),79 Ohio St.3d 46. A parent must be given every procedural and substantive protection the law allows prior to terminating that parent's rights to the child. Id. Due process includes a hearing upon adequate notice, assistance of counsel, and, under most circumstances, the right to be present at the hearing. In re Thompson (Apr. 26, 2001), Franklin App. No. 00AP-1358.
 {¶ 8} In order to terminate appellant's rights, FCCS was required to demonstrate by clear and convincing evidence that (1) one of the four factors enumerated in R.C. 2151.414(B)(1) applies, and (2) termination of parental rights is in the child's best interests. In re Gomer, Wyandot App. No. 16-03-19, 2004-Ohio-1723. Clear and convincing evidence is the measure or degree or proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. In re Abram, Franklin App. No. 04AP-220, 2004-Ohio-5435. It does not mean the evidence must be clear and unequivocal and does not require proof beyond a reasonable doubt. Id.
 {¶ 9} On appellate review, permanent custody motions supported by the requisite evidence going to all the essential elements of the case will not be reversed as against the manifest weight of the evidence. In reBrown, Franklin App. No. 03AP-969, 2004-Ohio-3314, at ¶ 11, citingIn re Brofford (1992), 83 Ohio App.3d 869; Abram, supra. Further, in determining whether a judgment is against the manifest weight of the evidence, the reviewing court is guided by the presumption that the findings of the trial court are correct. Brofford, supra, citingSeasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77. "The underlying rational of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe *Page 5 
their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id. at 80; Abram, supra. While appellant does not contest the trial court's determination that one of the four factors enumerated in R.C. 2151.414(B)(1) applies, we address that aspect of the case as well for purposes of finality.
 {¶ 10} R.C. 2151.414(B) provides that a court may grant permanent custody of a child to the movant if, as relevant here, (1) "[t]he child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents" under R.C. 2151.414(B)(1)(a), or (2) the child is abandoned under R.C. 2151.414(B)(1)(b).
A. R.C. 2151.414(B)(1)(a).
 {¶ 11} In determining whether a child cannot or should not be placed with either parent within a reasonable time, the court must consider all relevant evidence, including the factors listed in R.C. 2151.414(E)(1) through (16). R.C. 2151.414(E). If the court determines by clear and convincing evidence that one or more of the enumerated factors in R.C. 2151.414(E)(1) through (16) exist, the court shall enter a finding that the child cannot or should not be placed with either parent. One factor alone will support a trial court's decision that the child cannot or should not be placed with either parent within a reasonable time period.In re Keaton, Ross App. No. 04CA2785, 2004-Ohio-6210, citing In reWilliam S. (1996), 75 Ohio St.3d 95. *Page 6 
 {¶ 12} R.C. 2151.414(E)(1) provides that "[f]ollowing the placement of a child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home." To determine "whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties." Id.
 {¶ 13} Here, the case plan required appellant to complete random urine screens, to complete drug treatment, to attend two 12-step meetings per week, to meet the minor child's basic needs, to show she is able to provide safe, appropriate housing for the minor child, and to show she is current on all utilities. The trial court determined that although FCCS diligently attempted to assist appellant, appellant failed to remedy the problems that initially caused the child to be taken from her custody. The evidence supports the trial court's conclusion.
 {¶ 14} Appellant admitted during trial that she saw the child only once, shortly after her birth, in August 2006. She further acknowledged she did not submit the required urine screens and attended no 12-step meetings until she was furloughed to Maryhaven. Moreover, from the time of the minor child's birth until appellant's incarceration in September 2007, appellant lived on the street. During that time period, she was cited with numerous misdemeanor violations, including a drug paraphernalia charge that was *Page 7 
reduced to disorderly conduct and multiple charges of solicitation, one issued three days after the minor child's birth.
 {¶ 15} Due to appellant's repeated incarceration as a result of convictions on the misdemeanor charges, appellant continued to be unable to provide for the minor child, including food, clothing, shelter, or basic necessities. Moreover, the evidence indicated the minor child is developmentally delayed and requires both physical and occupational therapy. Appellant's inability to meet the minor child's basic needs strongly suggests a greater inability to meet the minor child's heightened needs.
 {¶ 16} In the final analysis, appellant failed to comply with any aspect of the case plan and only began working on the chemical dependency aspect of the plan just prior to trial. Appellant's failure to even address the case plan supports the trial court's determination that appellant failed to remedy the conditions that led to the minor child's removal from appellant's custody.
B. R.C. 2151.414(B)(1)(b).
 {¶ 17} Appellant's failure to maintain contact with the child also is relevant to R.C. 2151.414(B)(1)(b). Appellant had no contact with the child since August 2006 and provided no food, clothing, shelter, or other basic necessities for the child from the time of the child's birth to the hearing. On those facts, the trial court could find appellant abandoned the minor child. See R.C. 2151.011(C) (specifying that "[f]or the purposes of this chapter, a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of time"). *Page 8 
C. Best Interests of the Minor Child.
 {¶ 18} Because the trial court's decision is supported under R.C. 2151.414(B)(1), we must determine whether the trial court properly found permanent custody was in the best interests of the minor child. See R.C. 2151.414(D).
 {¶ 19} Under R.C. 2151.414(D)(1), the trial court considered the interaction relationship of the minor child with appellant. The court noted that, from the date of the child's birth to the date of trial, appellant had a single contact with the child in August 2006; similarly, the father had a single contact. All testimony indicated the child has no bond with either parent or with the father's mother who likewise visited the minor child only once. By contrast, the minor child had a loving relationship with the foster mother and was bonded to her.
 {¶ 20} Under R.C. 2151.414(B)(2), the trial court was to consider the wishes of the child. As the guardian ad litem stated, the minor child, approximately one and one-half years of age at the time of the hearing, was unable to express her wishes. The guardian ad litem, however, testified to the minor child's loving relationship with the foster mother, and stated the child is bonded to a prospective adoptive family. Based on the child's interaction with those persons, the guardian ad litem recommended that FCCS's permanent custody motion be granted.
 {¶ 21} The remaining factors, as well as the evidence supporting them, similarly buttress the trial court's determination. Under R.C. 2151.414(B)(3), the evidence revealed the minor child was in the custody of FCCS from the time of her release from the hospital. After approximately 18 months in FCCS's custody, the minor child needed a legally secure placement, one that only can be achieved through the grant of permanent custody *Page 9 
to the agency. See R.C. 2151.414(D)(4). Finally, R.C. 2151.414(B)(5) references R.C. 2151.414(E)(7) to (11), one of which applies: the parent has abandoned the child. R.C. 2151.414(E)(10).
 {¶ 22} With those findings, supported through the evidence in the record, the trial court's determination that the best interests of the minor child are served through a grant of permanent custody to FCCS is not against the manifest weight of the evidence. Accordingly, appellant's second assignment of error is overruled.
II. First Assignment of Error — Continuance {¶ 23} Appellant's first assignment of error contends the trial court erred in failing to grant appellant's motion for continuance presented to the trial court on the day of trial, January 30, 2008. The parties agree that an appellate court will not reverse a trial court's decision denying a motion for continuance unless the trial court abuses its discretion. See In re Nevaeh J., Lucas App. No. L-06-1093,2006-Ohio-6628, ¶ 45-46. In considering whether a trial court abused its discretion in denying a motion for continuance, we consider the length of the requested delay, prior continuances requested and received, the presence or absence of legitimate reasons for the requested delay, appellant's participation or contribution to the circumstances giving rise to the request for a continuance, and any other relevant factors.State v. Unger (1981), 67 Ohio St.2d 65, 67-68.
 {¶ 24} Here, the trial court did not abuse its discretion in denying the request for a continuance. While the length of the requested delay was less than specific, counsel for appellant appeared to request a continuance of anywhere from a week or two up to a month to two months. The reasons for the requested continuance were apparent. *Page 10 
Incarcerated from September 2007 until her furlough to Maryhaven for drug treatment shortly before the January 30, 2008 hearing, appellant hoped delaying the hearing date would allow her the opportunity to gather positive evidence from her stay at Maryhaven to suggest a serious attempt to complete the case plan and retain custody of the minor child.
 {¶ 25} Nevaeh J. is instructive here. There, the father sought a continuance "to demonstrate, through his participation in case plan services, his willingness and ability to provide a home for Nevaeh." Id. at ¶ 47. In reviewing the trial court's decision to deny the father's request for a continuance, the appellate court concluded the trial court did not abuse its discretion because the father's "actions of choosing not to establish paternity, visit, or receive services for over seven months were dilatory." Id. As the court explained, the father's "delay in taking these basic, necessary steps toward reunification with Nevaeh demonstrates a lack of commitment and an unwillingness to provide a permanent home. The trial court's refusal to continue the hearing was not unreasonable, arbitrary, or unconscionable." Id.
 {¶ 26} Here, appellant delayed approximately 18 months in availing herself of the services that would have assisted her in meeting the objectives of the case plan designed to reunify her with the minor child. While the reasons for appellant's delay may be apparent from the record, the trial court properly could regard her failure to pursue the available services as dilatory. Not only did appellant delay in seeking services to assist her in completing the case plan, but she requested multiple continuances prior to the January 30, 2008 hearing and inconvenienced the court, witnesses, and attorneys by apparently making the motion on the day of the hearing. The trial court did not abuse its *Page 11 
discretion in refusing to grant the continuance. See In re A.L., Franklin App. No. 07AP-638, 2008-Ohio-800.
 {¶ 27} Moreover, a continuance likely would not have changed the outcome of the case. Appellant's request for a continuance of up to two months may have allowed appellant to demonstrate some progress toward dealing with her drug addiction, but it would not have remedied the multiple other ways in which appellant failed to comply with the basics of the case plan the trial court approved and adopted. Even if she could complete the case plan, the evidence before the trial court allowed it to conclude that because appellant failed to maintain contact with the minor child since August 2006, she abandoned the child, itself a separate basis for FCCS's motion. Lastly, the minor child's best interests, a factor the trial court could consider under theUnger factors, supports the trial court's decision to deny a continuance, as the child had been in foster care for 18 months and potentially had the opportunity for adoptive placement.
 {¶ 28} Appellant's first assignment of error is overruled.
 {¶ 29} Having overruled both of appellant's assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
 McGRATH, P.J., and KLATT, J., concur. *Page 1