[Cite as *In re J.E.*, 2017-Ohio-8272.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

IN RE:                                 CASE NO. 9-17-07

       J.E.,

                                      **O P I N I O N**

[SASHA STEELE - APPELLANT]


Appeal from Marion County Common Pleas Court
Family Division
Trial Court No. 15 AB 0016

**Judgment Affirmed**

**Date of Decision: October 23, 2017**


APPEARANCES:

     *Robert C. Nemo* **for Appellant**

     *Justin J. Kahle* **for Appellee**

**PRESTON, P.J.**

{¶1} Appellant, Sasha Steele ("Steele"), appeals the March 8, 2017 judgment entry of the Marion County Court of Common Pleas, Family Division, granting permanent custody of her minor child, J.E., to appellee, the Marion County Children's Services Board ("the Agency"). For the reasons that follow, we affirm.

{¶2} J.E. is the minor child of Steele and Jordan Emmons ("Emmons") born in December of 2014. (Doc. No. 1).[1] On January 6, 2015, the Agency filed a complaint alleging that J.E. was an abused and dependent child under R.C. 2151.031 and R.C. 2151.04, respectively. (*Id.*). That same day, the Agency filed a "motion for ex parte/emergency orders with notice of hearing." (Doc. No. 3). Also on January 6, 2015, the trial court granted the Agency pre-dispositional interim custody of J.E. and also granted the Agency's "motion for ex parte/emergency orders with notice of hearing." (Doc. Nos. 4, 5).

{¶3} At multiple points in the case, the Agency submitted case plans to the trial court, which the trial court approved and incorporated into disposition entries. (Doc. Nos. 36, 63, 99). The Agency also filed semiannual administrative reviews. (Doc. Nos. 31, 38, 61, 83).

{¶4} On January 13, 2015, the trial court appointed a guardian ad litem ("GAL") for J.E. (Doc. No. 9). On January 23, 2015, the trial court appointed

---

[1] The complaint describes Emmons as the "alleged father." (Doc. No. 1). He was determined to be the biological father of J.E. after the filing of the complaint. (Doc. No. 97 at 2).

counsel for Steele. (Doc. No. 13). On March 30, 2016, the trial court appointed counsel for Emmons.[2] (Doc. No. 45).

{¶5} After a shelter-care and pre-trial hearing on January 28, 2015, the trial court on February 11, 2015 issued an order that temporary custody of J.E. remain with the Agency and scheduled the matter for adjudication on March 13, 2015. (Doc. No. 17). That adjudication was continued on the trial court's motion because Steel was not transported to the hearing. (Doc. No. 21).

{¶6} On March 27, 2015, Steele stipulated that J.E. was a dependent child under R.C. 2151.04. (Doc. No. 27). The trial court found J.E. dependent and dismissed the abuse complaint. (*Id.*). On April 15, 2015, the trial court ordered that temporary custody of J.E. remain with the Agency. (Doc. No. 28). At multiple points after adjudicating J.E. a dependent child and awarding temporary custody to the Agency, the trial court reviewed that disposition but did not alter it. (*See* Doc. Nos. 33, 35, 37, 47, 70, 72. 75).

{¶7} On April 26, 2016, the Agency filed a motion for permanent custody of J.E. (Doc. No. 48). The trial court scheduled the permanent custody hearing for July 18, 2016. (Doc. No. 49). On July 7, 2016, Steele filed a motion to continue that hearing. (Doc. No. 65). On July 12, 2016, the Agency filed a memorandum in opposition to the motion to continue. (Doc. No. 66). The trial court granted the

---

[2] Because only Steele filed an appeal, we will not discuss any filings by Emmons.

motion to continue on August 8, 2016 and rescheduled the permanent custody hearing for November 7, 2016. (Doc. No. 67). The permanent custody hearing set for November 7, 2016 was continued by agreement of the parties. (Doc. No. 97 at 4).

{¶8} On January 6, 2017, Steele filed a motion to continue the permanent custody hearing set for January 12, 2017. (Doc. No. 86). On January 10, 2017, the Agency filed a memorandum in opposition to the motion to continue. (Doc. No. 87). The trial court denied the motion to continue on January 11, 2017. (Doc. No. 88).

{¶9} The trial court held a permanent custody hearing on January 12, 2017. (Doc. No. 97). The guardian ad litem submitted his report and recommendation on January 30, 2017 and recommended that the trial court grant the Agency's motion for permanent custody. (Doc. No. 92). On March 8, 2017, the trial court filed its judgment entry granting the Agency permanent custody of J.E. (Doc. No. 97).

{¶10} On March 30, 2017, Steele filed her notice of appeal. (Doc. No. 101). She brings three assignments of error for our review.

**Assignment of Error No. I**

**The Trial Court Abused Its Discretion When It Denied Appellant's Motion For [A] Continuance.**

{¶11} In her first assignment of error, Steele argues that the trial court abused its discretion in denying her motion to continue the January 12, 2017 permanent

-4-

custody hearing. Specifically, Steele argues that the trial court abused its discretion in denying her motion for a continuance because she planned to move into a sober living house, had a probation violation hearing scheduled for January 18, 2017, in Delaware County, and needed more time to complete programming and make herself better able to care for her daughter. Steele also argues that the trial court's one-sentence entry denying her motion to continue did not consider the factors that a court must consider in determining whether to grant a continuance. Steele further argues that the trial court abused its discretion in denying her motion to continue because there was "some haste" on the Agency's part when it filed its motion for permanent custody of J.E. (Appellant's Brief at 10).

{¶12} "Continuances shall be granted only when imperative to secure fair treatment for the parties." *In re Distafano*, 3d Dist. Seneca No. 13-06-14, 2006-Ohio-4430, ¶ 11, quoting Juv.R. 23. "A decision by the trial court to deny a motion for continuance is within the sound discretion of the trial court and should not be reversed absent a showing of abuse of that discretion." *Id.*, quoting *In re Miller*, 3d Dist. Auglaize No. 2-04-02, 2004-Ohio-3023, ¶ 7. The term "abuse of discretion" refers to a decision that is "arbitrary, unreasonable, or unconscionable." *Sandusky Properties v. Aveni*, 15 Ohio St.3d 273, 275 (1984), citing *Dayton ex rel. Scandrick v. McGee*, 67 Ohio St.2d 356, 359 (1981) and *State v. Adams*, 62 Ohio St.2d 151,157 (1980).

**{¶13}** In considering a motion for a continuance, a court should consider (1) the length of the delay requested; (2) whether other continuances have been requested and granted; (3) any inconvenience to parties, witnesses, opposing counsel, and the court; (4) whether the requested delay is for a legitimate purpose or is instead dilatory, purposeful, or contrived; (5) whether the defendant contributed to the situation that gives rise to the motion for a continuance; and (6) other relevant factors, depending on the unique facts of a case. *In re J.D.*, 3d Dist. Hancock No. 5-10-34, 2011-Ohio-1458, ¶ 45, citing *In re T.C.*, 140 Ohio App.3d 409, 417 (3d Dist.2000), citing *State v. Unger*, 67 Ohio St.2d 65, 67-68 (1981).

**{¶14}** When a litigant received prior continuances and requests an additional continuance of indeterminate length, the first two *Unger* factors weigh in favor of denying the continuance, especially in light of the fact that establishing permanency for children in temporary placement is paramount. *In re J.C.*, 10th Dist. Franklin No. 10AP-766, 2011-Ohio-715, ¶ 39-40. The propriety of denying a request for a continuance is further supported when a defendant requests a continuance for a legitimate reason but also contributed to the circumstances giving rise to the request. *Id.* at ¶ 41. When a defendant faces ongoing drug addiction and is without stable housing such that a continuance would not likely change the outcome of the case, a court does not abuse its discretion in denying the continuance. *Id.* at ¶ 45. The

propriety of denying a continuance is further bolstered when the motion for permanent custody has been pending for more than 120 days. *Id.* at ¶ 46.

{¶15} In the instant case, the trial court granted Steele two prior continuances. *Id.* at ¶ 40 (noting that the second *Unger* factor supported the denial of a continuance when a prior continuance was granted). In addition, Steele's request for a continuance did not specify a date to which she wanted the hearing continued. *Id.* at ¶ 39 (holding that the first *Unger* factor weighs in favor of denying a continuance where the length of the continuance requested is indeterminate); *In re J.D.* at ¶ 46 (affirming the trial court's denial of a continuance where the request for a continuance did not state how long a continuance was necessary). Even where, as here, a defendant requests a continuance for the legitimate purpose of making progress in drug treatment, a court does not abuse its discretion in denying the request. *In re B.G.W.*, 10th Dist. Franklin No. 08AP-181, 2008-Ohio-3693, ¶ 24 (construing the purpose-of-the-request factor against the defendant where the reason for the request was to allow the defendant to gather evidence of progress in drug treatment); *In re Shanequa H.*, 109 Ohio App.3d 142, 146 (6th Dist.1996) (holding that a trial court did not abuse its discretion in denying a continuance requested so that the defendant could enter drug treatment). The inconvenience to the parties and the court would be substantial because the hearing was already rescheduled numerous times. It is undisputed here that Steele contributed to the circumstances

that brought about the request for the continuance, as she both participated in the drug abuse that necessitated drug treatment and engaged in conduct giving rise to an alleged probation violation and the resulting hearing. *In re J.C.* at ¶ 41-42 (holding that the fifth *Unger* factor weighed in favor of denying the continuance where the defendant's unlawful conduct brought about the request for the continuance).

{¶16} We also consider, as a unique factor relevant to this case, that R.C. 2151.414(A)(2) provides that "[t]he court shall hold the hearing * * * not later than one hundred twenty days after the agency files the motion for permanent custody, except that, for good cause shown, the court may continue the hearing for a reasonable period of time beyond the one-hundred-twenty-day deadline." *In re J.C.* at ¶ 46, quoting R.C. 2151.414(A)(2). Here, the Agency filed its motion for permanent custody on April 26, 2016. (Doc. No. 48). Thus, the trial court had already significantly exceeded the deadline imposed by the statute by the time Steele filed the pertinent motion to continue; therefore, the court did not abuse its discretion by denying the motion. *In re J.C.* at ¶ 46.

{¶17} We further consider, as a unique factor relevant to this case, the fact that a continuance would likely not have changed the outcome of the case. *In re J.C.*, 10th Dist. Franklin No. 10AP-766, 2011-Ohio-715, ¶ 45. The trial court found that the parents' circumstances "fail to present any opportunity for [J.E.'s] return to

either of them within a reasonable time[.]" (Doc. No. 97). The trial court further found little likelihood that Steele could complete drug treatment, procure gainful employment, and locate stable housing in the foreseeable future. (*Id.*); *In re J.C.* at ¶ 45 (noting that a parent's inability to remedy drug addiction and secure a stable residence weighs in favor of finding that a trial court acted within its discretion in denying a continuance).

{¶18} We conclude that Steele's argument as to the brevity of the trial court's judgment entry denying her motion to continue is unpersuasive. *In re J.D.*, 3d Dist. Hancock No. 5-10-34, 2011-Ohio-1458, ¶ 46-48. Though the *Unger* factors enumerated above are necessary for consideration, we do not require courts to explicitly undertake *Unger*'s six-factor analysis in every judgment entry ruling on a motion to continue. *Id.* (affirming the denial of a motion to continue where the judgment entry did not contain any explanation for the trial court's decision).

{¶19} We further conclude that Steele's argument as to the haste with which the motion for permanent custody was allegedly filed is unpersuasive. We note that the speed with which the Agency files its motion for permanent custody is not among the *Unger* factors. *See State v. Unger*, 67 Ohio St.2d 65, 67-68 (1981). Moreover, Steele had nine months between the Agency's filing of its motion for permanent custody and the permanent custody hearing in which to put herself in a position to advocate for her interests.

{¶20} Based on the reasoning above, we conclude that the trial court did not abuse its discretion in denying Steele's motion for a continuance. Steele's first assignment of error is overruled.

**Assignment of Error No. II**

**Appellant Was Denied Her Right To Effective Assistance Of Counsel.**

{¶21} In her second assignment of error, Steele argues that she was denied her right to effective assistance of trial counsel. Specifically, she argues that she was denied effective assistance of trial counsel because her trial counsel did not object to two instances of hearsay testimony pertaining to the availability of a kinship placement for J.E. at the permanent custody hearing.

{¶22} "In permanent custody proceedings, where parents face losing their children, we apply the same test as the test for ineffective assistance of counsel in criminal cases." *In re E.C.*, 3d Dist. Hancock No. 5-15-01, 2015-Ohio-2211, ¶ 40, citing *In re Heston,* 129 Ohio App.3d 825, 827 (8th Dist.1998). In order to demonstrate ineffective assistance of trial counsel, one must first show that the trial counsel's performance fell below an objective standard of reasonableness. *Id.* at ¶ 41, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984) and *State v. Bradley*, 42 Ohio St.3d 136, 137 (1989). One must next demonstrate that, but for trial counsel's errors, the result of the proceeding would have been different. *Id.* The appellant bears the burden of establishing ineffective assistance of trial

counsel and, in order to do so, must overcome the strong presumption that licensed attorneys provided competent representation. *Id.*, citing *State v. Calhoun*, 86 Ohio St.3d 279, 289 (1999).

**{¶23}** In the instant case, Steele has not established that the result of the proceeding would have been different but for the alleged errors of counsel as noted above. A trial court is not required to consider the availability of a kinship placement prior to granting permanent custody of a child to an agency. *In re S.G.*, 3d Dist. Defiance No. 4-16-13, 2016-Ohio-8403, ¶ 82, citing *In re P.S.*, 5th Dist. Licking No. 16–CA–11, 2016–Ohio–3489, ¶ 57. Therefore, the trial court could have come to the same conclusion if it excluded the evidence to which Steele refers. *Id.*

**{¶24}** Because we conclude that Steele has not demonstrated prejudice, we need not address whether Steele's trial counsel's performance fell below an objective standard of reasonableness, as any showing of ineffective assistance requires the defendant to satisfy both prongs of the applicable legal test. *In re E.C.* at ¶ 41.

**{¶25}** For the reasons explained above, Steele's second assignment of error is overruled.

**Assignment of Error No. III**

**The Trial Court's Decision To Award Appellee Permanent Custody Was Against The Manifest Weight Of The Evidence And Contrary To Law.**

{¶26} In her third assignment of error, Steele argues that the trial court's decision to award the Agency permanent custody of J.E. was against the manifest weight of the evidence and was contrary to law. Specifically, Steele argues that the trial court erred when it did not specifically enumerate which best-interest factors it found supported the granting of permanent custody to the Agency. Steele further argues that, even if the trial court properly considered the best-interest factors as the statute requires, the trial court erred when it found that it was in J.E.'s best interest to grant permanent custody to the agency.

{¶27} The right to raise one's child is a basic and essential right. *In re Murray,* 52 Ohio St.3d 155, 157 (1990), citing *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208 (1972) and *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625 (1923). "Parents have a 'fundamental liberty interest' in the care, custody, and management of the child." *Id.,* quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388 (1982). However, the rights and interests of a natural parent are not absolute. *In re Thomas*, 3d Dist. Hancock No. 5-03-08, 2003-Ohio-5885, ¶ 7. These rights may be terminated under appropriate circumstances and when the trial court

has met all due process requirements. *In re Leveck*, 3d Dist. Hancock Nos. 5-02-52, 5-02-53, and 5-02-54, 2003-Ohio-1269, ¶ 6.

{¶28} When considering a motion for permanent custody of a child, the trial court must comply with the statutory requirements set forth in R.C. 2151.414. *See In re C.E.*, 3d Dist. Hancock Nos. 5-09-02 and 5-09-03, 2009-Ohio-6027, ¶ 14. R.C. 2151.414(B)(1) provides, in relevant part, that a trial court

> may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
>
> (a)   The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> * * *
>
> (d)   The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for

twelve or more months of a consecutive twenty-two-month period *

* *.

R.C. 2151.414(B)(1)(a), (d).

{¶29} "[T]he findings under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(d) are alternative findings, [and] each is independently sufficient to use as a basis to grant the Agency's motion for permanent custody." *In re M.R.*, 3d Dist. Defiance No. 4-12-18, 2013-Ohio-1302, ¶ 80.

{¶30} "If the trial court determines that *any* provision enumerated in R.C. 2151.414(B)(1) applies, the trial court must determine, by clear and convincing evidence, whether granting the agency permanent custody of the child is in the child's best interest." (Emphasis sic.) *In re A.F.*, 3d Dist. Marion No. 9-11-27, 2012-Ohio-1137, ¶ 55, citing *In re D.M.*, 3d Dist. Hancock Nos. 5-09-12, 5-09-13, and 5-09-14, 2009-Ohio-4112, ¶ 33 and *In re K.H.*, 3d Dist. Hancock No. 5-10-06, 2010-Ohio-3801, ¶ 30. In determining whether granting the agency permanent custody is in the best interest of the child, R.C. 2151.414(D)(1) provides:

> [T]he court shall consider all relevant factors, including, but not limited to, the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home

providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1)(a)-(e).

{¶31} "Clear and convincing evidence is more than a preponderance of the evidence but not as much evidence as required to establish guilt beyond a reasonable doubt as in a criminal case; rather, it is evidence which provides the trier of fact with a firm belief or conviction as to the facts sought to be established." *In re H.M.K.,* 3d Dist. Wyandot Nos. 16–12–15 and 16–12–16, 2013–Ohio–4317, ¶ 42, citing *In re*

*Meyer,* 98 Ohio App.3d 189, 195 (3d Dist.1994), citing *Cincinnati Bar Assn. v. Massengale,* 58 Ohio St.3d 121, 122 (1991). "Upon review, an appellate court 'must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof.' " *Id.* at ¶ 43, quoting *In re Meyer* at 195, citing *In re Adoption of Holcomb,* 18 Ohio St.3d 361, 368 (1985). "A reviewing court will not reverse a trial court's determination unless it is not supported by clear and convincing evidence." *Id.,* citing *In re Meyer* at 195, citing *In re Adoption of Holcomb* at 368 and *In re Adoption of Lay,* 25 Ohio St.3d 41, 42 (1986). *See also In re A.E.*, 3d Dist. Seneca Nos. 13–14–14 and 13–14–15, 2014–Ohio–4540, ¶ 28 ("A court's decision to terminate parental rights will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which a court can determine by clear and convincing evidence that the essential statutory elements for a termination of parental rights have been established."), citing *In re B.G.W.,* 10th Dist. Franklin No. 08AP–081, 2008–Ohio–3693 and *In re Nevaeh J.,* 6th Dist. Lucas No. L–06–1093, 2006–Ohio–6628, ¶ 17.

**{¶32}** In the instant case, the trial court found that J.E. cannot be placed with her parents within a reasonable period of time. (Doc. No. 97 at 7-8). Steele does not challenge any of the trial court's findings as to R.C. 2151.414(B)(1); rather, she claims that the trial court erred by not adequately considering and applying the best-interest factors enumerated in R.C. 2151.313(D)(1)(a)-(e). (Appellant's Brief at

14). This argument is unpersuasive because a trial court need not consider each best-interest factor separately in its judgment entry. *In re A.M.*, 3d Dist. Marion No. 9-14-46, 2015-Ohio-2740, ¶ 18 (noting that a trial court must either consider the factors individually or "provide some affirmative indication in the record that [it] has considered the specific factors listed in R.C. 2151.414(D)"). This requirement is met when a trial court cites to the appropriate statute in making its best-interest finding. *Id.*, citing *In re M.R.*, 3d Dist. Defiance No. 4-12-18, 2013-Ohio-1302, ¶ 78.

**{¶33}** In this case, the trial court referenced the applicable statute in its entry. "In accordance with [R.C.] 2151.414(D), the Court finds that the grant of permanent custody [of] J.E. to [the Agency] is in the best interests of said child." (Doc. No. 97 at 9). *See In re M.R.* at ¶ 78 ("While it is far from the better practice, we find that the trial court's citation to the appropriate statute when making its best interest finding meets its obligation, albeit to the minimum extent possible, in demonstrating that the R.C. 2151.414(D) factors were considered."). Additionally, in its judgment entry, the trial court made findings relevant to the R.C. 2151.414(D) factors. (*See* Doc. No. 97 at 7-9). *See In re M.R.* at ¶ 78 ("Moreover, * * * there is clear and convincing evidence in the record to support the trial court's finding that it is in M.R.'s best interest to grant the Agency's motion for permanent custody.").

{¶34} The record supports the trial court's factual findings relevant to the R.C. 2151.414(D) factors. Regarding R.C. 2151.414(D)(1)(a), J.E. was born in December of 2014 and placed with a foster family shortly after her birth. (Jan. 12, 2017 Tr. at 6); (Doc. No. 97 at 3). Foster mother Gina Tighe ("Tighe") testified that she and her husband are bonded with J.E. and that J.E. refers to them as "mommy" and "daddy," respectively. (Jan. 12, 2017 Tr. at 10). Steele spent much of the time between J.E.'s birth and the permanent custody hearing incarcerated. (*Id.* at 45-48). Regarding R.C. 2151.414(D)(1)(b), the trial court seems to have duly regarded J.E.'s young age by noting that she was born in December of 2014, making her approximately 27 months old at the time of the trial court's decision. (*See* Doc. No. 97 at 1). Regarding R.C. 2151.414(D)(1)(c), the trial court noted that J.E. has been in the temporary custody of the agency and in the physical custody of the Tighe family since January of 2015. (*Id.* at 2). J.E. was in the temporary custody of the agency continuously for more than 12 months of a consecutive 22-month period. (Doc. No. 97 at 5, 8). Regarding R.C. 2151.414(D)(1)(d), the evidence demonstrated that Steele and Emmons are unable to provide a legally secure, permanent placement for J.E. (*Id.* at 8, 9); (Jan. 12, 2017 Tr. at 70, 75, 80).

{¶35} For the reasons above, we conclude that clear and convincing evidence supports the trial court's determinations under R.C. 2151.414 that it was required to make, and did make, in granting the Agency's motion for permanent custody. The

trial court made the proper findings under 2151.414(B)(1) and properly found that it is in J.E.'s best interest to grant permanent custody to the Agency. The trial court's decision to grant the Agency's motion for permanent custody is not against the manifest weight of the evidence. The trial court did not err in granting the Agency's motion for permanent custody.

**{¶36}** Steele's third assignment of error is overruled.

**{¶37}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ZIMMERMAN and SHAW, J.J., concur.**

**/jlr**