[Cite as *In re O.P.*, 2025-Ohio-238.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the Matter of: O.P., | : | |
| (A.S., | : | No. 23AP-701 |
| Appellant). | | (C.P.C. No. 21JU-1376) |
| | : | |
| | : | (REGULAR CALENDAR) |
| | : | |
| In the Matter of: J.P., | | No. 23AP-702 |
| | : | (C.P.C. No. 21JU-1380) |
| (A.S., | | |
| Appellant). | : | (REGULAR CALENDAR) |
| | : | |
| In the Matter of: R.W. | | No. 23AP-703 |
| | : | (C.P.C. No. 21JU-1381) |
| (A.S., | | |
| Appellant). | : | (REGULAR CALENDAR) |

_____

D E C I S I O N

Rendered on January 28, 2025

_____

**On brief:** [*Mitchell A Williams*], Public Defender, and *George M. Schumann*, for appellant.

**On brief:** *Robert J. McClaren*, for Franklin County Children Services.

_____

APPEALS from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch

BOGGS, J.

{¶ 1} Appellant, A.S., appeals the judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting appellee, Franklin County Children Services ("FCCS"), permanent custody of appellant's three minor children, R.W., J.P., and O.P. For the following reasons, we affirm the juvenile court's judgments.

## I.  PROCEDURAL HISTORY AND FACTS

{¶ 2}    A.S. is the mother of R.W. (d.o.b. December 26, 2013), J.P. (d.o.b. March 14, 2016), and O.P. (d.o.b. February 2, 2021).  J.P. ("Father J.P.") is the father of O.P. and J.P.  B.W. is the father of R.W.

{¶ 3}    On February 2, 2021, A.S. gave birth to O.P. at home.  That day A.S. and O.P. were transported to the hospital by squad.  According to FCCS's complaint, medics reported that A.S. appeared to be intoxicated and that she had fentanyl and methamphetamine on her person when she arrived at the hospital.  O.P. tested positive for fentanyl.  A.S. left the hospital on February 3, 2021, against medical advice, and returned to visit O.P. on February 7, 2021.

{¶ 4}    On February 10, 2021, FCCS filed complaints seeking temporary custody of the children.  FCCS's complaint noted that A.S. had been arrested for domestic violence and assault on December 31, 2020, and had a pending criminal case in case No. 2020 CRB 18667 in Franklin County Municipal Court.  A.S. was alleged to have assaulted Father J.P. in front of R.W. and J.P.

{¶ 5}    On February 12, 2021, a magistrate with the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granted FCCS's request for temporary custody of R.W., J.P., and O.P.  On February 17, 2021, O.P. was released from the hospital and placed with a foster family.  On March 29, 2021, J.P. and R.W. were adjudicated to be dependent minors and ordered into temporary court commitment of FCCS.  On the same day, O.P. was adjudicated to be an abused and neglected minor.

{¶ 6}    On June 6, 2022, FCCS filed motions for permanent custody of R.W., J.P., and O.P., arguing that the parents had not made significant progress in reaching their case plan goals.  Trial on the motions for permanent custody was continued multiple times and for various reasons, including to obtain and perfect service on the parties on July 25, August 15, October 5, and November 23, 2022.  On January 6 and March 8, 2023, the trial was again continued by agreement of the parties.  On June 6, 2023, the guardian ad litem requested a continuance, which the trial court granted.

{¶ 7}    Following the continuance of trial on June 6, 2023, trial was set for September 18, 2023.  On the day of trial, however, A.S. was arrested outside the courtroom immediately prior to trial due to an outstanding warrant.  A.S.'s counsel requested a

continuance and objected to the trial court proceeding without A.S., arguing that it would violate A.S.'s due process rights. Father J.P. supported the request for a continuance. FCCS opposed the motion for continuance, noting that the children had been in custody since February 2021, and urged the court to consider the factors set out in *State v. Unger*, 67 Ohio St.2d 65 (1981), in determining whether to grant or deny a continuance.

{¶ 8} The trial court ultimately denied the request for a continuance, citing the factors in *Unger*. The judge noted the length of time the children had been in the agency's care, the number of previous continuances, that the motion for permanent custody had been pending beyond the statutory deadline, the preparation of witnesses for trial that day, and A.S.'s actions that gave rise to the request for continuance.

{¶ 9} During trial, the court heard testimony from Father J.P. Father J.P. testified that he was living alone at his home. He stated that he had completed some drug testing, but he also testified that he did not regularly complete drug screens because a caseworker told him it was not required. Father J.P. also testified that since February 2023 he has had issues with transportation that caused him to miss visits with the caseworker and with the children, and that FCCS never offered help with transportation. He also testified that he had completed a domestic violence assessment and that the caseworkers at FCCS never informed him that he was not satisfactorily completing his case plan.

{¶ 10} The trial court also heard testimony from Mackenzie Jorge, a caseworker with FCCS who was assigned to this case. Jorge was tasked with assessing the parents' progress with their case plans, with the goal of reunification. Jorge testified that FCCS was unable to assess B.W. for services as he was incarcerated at the beginning of the case. By the time of trial, B.W. was no longer incarcerated and was living in a halfway house but was unable to accept placement or custody of the children.

{¶ 11} Jorge testified that the case plan objectives for A.S. were to complete random drug screens, complete an alcohol and other drug assessments and follow the recommendations, complete a mental health assessment and follow the associated recommendations, resolve all of her legal issues, visit with the children, complete a parenting class, and attend monthly visits with the FCCS caseworker. Jorge stated that Father J.P.'s case plan objectives were to complete random drug screens, complete an

alcohol and other drug assessment, complete a domestic violence assessment, visit with the children, and have visits with the caseworker.

{¶ 12} Jorge testified that from the beginning of the case there were periods of time where FCCS was unable to reach A.S. and did not have information on her whereabouts. She also stated that when A.S. and Father J.P. did attend visits with the children or caseworkers they always came together and that she suspected A.S. was still living with Father J.P. despite their history of domestic violence. Jorge testified that A.S. had not provided any information regarding a source of income or being able to provide appropriate housing for the children. Jorge stated that FCCS was aware that A.S. had completed a detox program, but, due to her subsequent criminal drug possession charges, A.S. was ordered to seek treatment at the Helping Achieve Recovery Together program ("HART"). Jorge testified that A.S. did not successfully complete the HART program and that she tested positive for fentanyl in March 2023. After that positive test, A.S. stopped showing up for drug screens. Jorge also noted that A.S. had not completed any mental health screenings and did not complete a parenting class in accordance with her case plan objectives.

{¶ 13} Jorge also stated that Father J.P. did not meet his case plan objectives. She testified that Father J.P. appeared to be seeking medical assistance and was receiving suboxone, but FCCS never received an alcohol and other drug assessment. She also noted that Father J.P. only completed a couple, sporadic drug screens. Jorge also testified that Father J.P. did not complete a domestic violence assessment but rather received a certificate for a healthy relationship workshop that did not appear to discuss domestic violence. Jorge stated that while the agency was aware Father J.P. was having issues with transportation for visits with the children, he did not receive any assistance from the agency because he had not requested help.

{¶ 14} Jorge testified that J.P. and O.P. have a good relationship with Father J.P., but that R.W. does not want to have any contact with Father J.P. Jorge noted that R.W. and O.P. are in the same foster home and are very bonded with the foster parents and other children in the home. Jorge also stated that the foster parents are possible adoptive parents for the children, and she testified that the children are in need of a legally secure permanent placement.

{¶ 15} The trial court also heard testimony from Emily Kirkpatrick, a case supervisor at FCCS. Kirkpatrick testified that she does not have information on A.S.'s income nor confirmation that A.S. has completed an alcohol and other drug assessment and a mental health assessment. She testified that A.S. had indicated to FCCS that she was living with Father J.P. Kirkpatrick noted that A.S.'s last drug screen was positive for fentanyl and that she is concerned A.S. is actively using drugs. Kirkpatrick further testified that Father J.P. also has not completed his case plan objectives, namely that he has not provided FCCS with information on a domestic violence assessment, alcohol and other drug treatments, and has only sporadically completed drug screenings. Kirkpatrick also noted that she has offered Father J.P. assistance with transportation, but he has not taken her up on that. Kirkpatrick testified that she believed permanent custody was in the children's best interest as they are very bonded with their foster families and A.S. and Father J.P. have been unable to prove that they are sober and can provide stable housing. She also testified that she has concerns about domestic violence in the home, as A.S. and Father J.P. may still be living together.

{¶ 16} The trial court then heard testimony from Daniel Fletcher, the guardian ad litem of the three minor children. Fletcher testified that R.W. wants to remain with her foster family and does not want to be with Father J.P. Fletcher stated that J.P. wants to be with his mother, A.S. Fletcher also noted:

> I've also got reports now from foster parents that when [J.P.] and mom have conversations on the phone which they do pretty often, mom is often intoxicated and he's disturbed by that and he's, you know, the foster parents are helping him understand that but that's been difficult for him to -- to reconcile oh, okay, I love mom but, you know, I don't understand why she sounds like this on the phone.

(Sept. 18, 2023 Tr. at 223.)

{¶ 17} Fletcher believed the minor children's foster families are willing to adopt and would be willing to maintain the children's relationships with their parents. He noted that the foster families coordinate visits between R.W. and J.P., as the two siblings are close.

{¶ 18} Fletcher testified that the children are in need of a legally secure permanent placement and stated:

> I think both parents love their children, want to do the right thing and complete their case plan. I don't think they can in -- in foreseeable future and because of that inability to do that and historical lack of performance on the case plan, I feel it's in the best interest to grant the -- for the Court to -- and I would recommend that the Court grant the motion for permanent custody to the agency.

(Sept. 18, 2023 Tr. at 232.)

{¶ 19} On September 19, 2023, the second day of trial, A.S. was again not present. The trial court continued the proceedings, noting that A.S. was at her arraignment and would not be present to testify. As A.S. was the last remaining individual scheduled to testify, the trial court continued proceedings until the following week. On September 26, 2023, the trial continued, with A.S. present. A.S., however, did not testify or present a case. In closing arguments, A.S.'s counsel again objected to the trial commencing on September 18, 2023 without A.S. present, as a violation of A.S.'s due process rights.

{¶ 20} On November 14, 2023, the trial court issued a decision and judgment entry granting FCCS's motion for permanent custody. The trial court noted that A.S. had appeared for trial but was arrested prior to the start of the hearing due to an active warrant. (Decision & Jgmt. Entry at 1.) The court noted:

> The request [for a continuance] on behalf of Mother's counsel was denied by the Court, indicating that the delay caused in this case by granting Mother's request for a continuance would not be in the Minor Children's best interest and that no caselaw presented by any party had shown the Court that Mother had a fundamental right to attend the Trial. The Court indicated that Mother's arrest warrant had been pending for quite some time (three months at the time of Trial) and Mother's actions prevented her from attending trial due to her failure to resolve her legal issues prior to Trial. The Court also specifically cited that prior to the hearing starting, Mother had ample time to meet with counsel and assist in her defense prior to Mother getting arrested. The Court cited the factors in considering this request as specified by *State v. Unger*, 67 Ohio St. 2d 65, 67, 423 N.E.2d 1078 (1981).
>
> Thereafter, based on the age of the motions (15 months at the time of Trial), prior requests for continuances by Mother, and due to the age of the case (31 months at the time of Trial), the Court denied the request to continue. However, the Court worked with Mother's counsel to communicate with the

Sheriff's Office in support of the Warrant to Convey to ensure that Mother was transported for Trial. On day two, when Mother was not transported, the Court continued the matter to the third day of Trial for Mother to appear. On day 3, Mother's counsel elected not to call Mother as a witness or present a case when provided the opportunity to do so.

(Decision & Jgmt. Entry at 2.)

{¶ 21} The trial court found that FCCS presented clear and convincing evidence pursuant to R.C. 2151.414(B)(1) in support of its motion for permanent custody. The court found that R.W., J.P., and O.P. had been in the custody of FCCS for a period longer than 12 months over a consecutive 22-month period and that the children had been in the custody of FCCS for 31 months at the time of trial. (Decision & Jgmt. Entry at 22.) Ultimately, the trial court found that FCCS presented clear and convincing evidence that permanent custody was in the children's best interests, that the children could not be placed with either of their parents within a reasonable time, and that the children should not be placed with their parents. *Id*. at 22.

{¶ 22} A.S. now appeals.

## II. ASSIGNMENT OF ERROR

{¶ 23} A.S. argues the following assignment of error:

Appellant-Mother was denied her due process right to be present at the hearing on the motion for permanent court commitment (PCC) and the juvenile court abused its discretion when it denied Appellant-Mother's request for a continuance.

## III. ANALYSIS

{¶ 24} Parents have a constitutionally protected fundamental interest in the care, custody, and management of their children. *Troxel v. Granville*, 530 U.S. 57, 65 (2000). The Supreme Court of Ohio has recognized the essential and basic rights of a parent to raise his or her child. *In re Murray*, 52 Ohio St.3d 155, 157 (1990). These rights, however, are not absolute, and a parent's natural rights are always subject to the ultimate welfare of the child. *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979). Thus, in certain circumstances, the state may terminate the parental rights of natural parents when it is in the best interest of the child. *In re E.G.,* 2007-Ohio-3658, ¶ 8, citing *In re Harmon*, 4th Dist. No. 00 CA

2694, 2000 Ohio App. LEXIS 4550 (Sept. 25, 2000); *In re Wise*, 96 Ohio App.3d 619, 624 (9th Dist. 1994).

{¶ 25} A trial court may grant permanent custody to an agency if it determines by clear and convincing evidence that, pursuant to R.C. 2151.414(B)(1), " 'such relief is in the best interest of the child.' " *In re G.E.H.*, 2016-Ohio-3535, ¶ 52, quoting *In re J.T.*, 2012-Ohio-2818, ¶ 9. On appeal, we will not reverse a trial court's decision in a permanent custody case unless it is against the manifest weight of the evidence. *In re I.R.*, 2005-Ohio-6622, ¶ 4, citing *In re Andy-Jones*, 2004-Ohio-3312, ¶ 28. Judgments in permanent custody proceedings are not against the manifest weight of the evidence "when all material elements are supported by competent, credible evidence." *J.T.* at ¶ 8.

{¶ 26} In her sole assignment of error, A.S. argues that the trial court's denial of her continuance request violated her due process rights. An appellate court will not reverse a denial of a continuance in a permanent court commitment case, or a decision to proceed at trial in the absence of an incarcerated parent, absent an abuse of discretion. *In re J.B.*, 2009-Ohio-3083, ¶ 26, citing *In re B.G.W.*, 2008-Ohio-3693, ¶ 23; *In re Ang.O.*, 2018-Ohio-5195, ¶ 17. An abuse of discretion connotes a decision that was unreasonable, arbitrary, or unconscionable. *Celmer v. Rodgers*, 2007-Ohio-3697, ¶ 19 (plurality opinion), citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 27} In reviewing whether a trial court abused its discretion in denying a continuance, an appellate court weighs any potential prejudice to the movant against the court's right to control its docket and the public's interest in the efficient dispatch of justice. *State v. Woods*, 2010-Ohio-1586, ¶ 24; *In re M.K.*, 2010-Ohio-2194, ¶ 14. A court should consider: (1) the length of the requested delay, (2) whether the parties have requested and received other continuances, (3) the inconvenience to the parties, witnesses, opposing counsel, and the court, (4) whether the requested delay is for legitimate reasons or is merely dilatory, purposeful, or contrived, (5) whether the movant contributed to the circumstances giving rise to the request for a continuance, and (6) any other relevant factors, depending on the unique circumstances of each case. *Woods* at ¶ 24, citing *Unger*, 67 Ohio St.2d at 67; *J.B.* at ¶ 26.

{¶ 28} We do not find an abuse of discretion here. The trial court judge appropriately considered the factors under *Unger*, stating:

> I will note the length of time that all of the children have been in the agency's care, the number of continuances that we've already had as well as how long this motion has been pending[,] over twice as long as it should under our statutory deadline. So having considered the length of the delay although here there was no specific request being made as far as the time, I have no idea how long mom will be incarcerated because I have no information on that. I do know that there have been other continuance requested multiple by everyone. [sic] To my knowledge the parties all prepared for their witnesses to be here today and I already spoke earlier that the movant contributed to the circumstances that gave rise to the request for the continuance. So, considering all of those factors as well as other factors such as the nature of this case, how long it's been pending, we did check-in last week to confirm that everyone was prepared to go forward and although it was unfortunate that it happened here, I will deny the request for the continuance and proceed.

(Sept. 18, 2023 Tr. at 30-31.)

{¶ 29} As the court noted, the trial had already been continued numerous times, witnesses were prepared to attend trial that day, and A.S.'s actions contributed to her arrest and, therefore, to the request for the continuance. We also note that while A.S. was not present for trial on September 18, 2023 (due to her arrest) or on September 19, 2023 (due to her arraignment), A.S. did attend the third day of trial on September 26, 2023. On the second day of trial, A.S.'s counsel indicated that A.S. was intending to testify, and as she was the only remaining witness, the trial court continued the proceedings for one week for a warrant to convey to be filed and processed for A.S. to attend trial. The following week, on September 26, 2023, A.S. did attend trial but she did not opt to testify, nor did her counsel present a case.

{¶ 30} A.S. directs this court to *In re Sears*, 2002-Ohio-368, ¶ 11, stating that "[n]atural parents have a constitutionally protected right to be present at a permanent custody hearing." This court recognized that a parent's right to be present at that hearing, however, is not absolute and that any continuance should be in the best interests of the children. *Id.* Additionally, as to an incarcerated parent that does not attend a permanent custody hearing, it is well-settled that the parent's due process rights are not violated when the parent is represented at the hearing by counsel, a full record of the hearing is made, and

any testimony that the parent wishes to present could be presented by deposition. *Ang.O.* at ¶ 17. Here, A.S. was represented by counsel, a full record of the hearing was made, and she had an opportunity to testify on the last day of trial when she was in attendance or provide her testimony through a deposition.

**{¶ 31}** A.S.'s attendance on the first or second day of trial was also unlikely to have changed the outcome of the proceedings. As testimony from FCCS indicated, A.S. and Father J.P. did not complete their case plan objectives, and there were concerns of substance abuse. A.S. lacked stable housing and income, and A.S. and Father J.P. were still living together despite their history of domestic violence. Further, the children's guardian ad litem recommended granting permanent custody to FCCS despite the love shared amongst the family. R.W. wanted to remain with her foster family, and all three children were doing well with their respective foster families. Accordingly, we find no abuse of discretion by the trial court's denial of A.S.'s request for a continuance, and we overrule her assignment of error.

## IV. CONCLUSION

**{¶ 32}** Having overruled appellant's sole assignment of error, we accordingly affirm the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch's judgments granting FCCS permanent custody of the minor children.

*Judgments affirmed.*

BEATTY BLUNT and MENTEL, JJ., concur.

_____